UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT
*Electronically filed*

| | |
|---|---|
| **TABERNACLE BAPTIST CHURCH, INC., OF NICHOLASVILLE, KENTUCKY**, <br><br> *Plaintiff* <br><br> v. <br><br> **ANDREW BESHEAR**, in his official capacity as the Governor of the Commonwealth of Kentucky, <br><br> **ERIC FRIEDLANDER**, in his official capacity as the Secretary of the Cabinet for Health and Family Services, and <br><br> *Defendants* | Civil Action No. 3:20-cv-33-GFVT <br> Judge Gregory F. Van Tatenhove |

### COMMONWEALTH OF KENTUCKY *EX REL.* ATTORNEY GENERAL DANIEL CAMERON'S MOTION FOR EMERGENCY HEARING AND TEMPORARY RESTRAINING ORDER

Proposed Plaintiff-Intervenor the Commonwealth of Kentucky *ex rel.* Attorney General Daniel Cameron respectfully moves the Court to hold an emergency hearing and to enter a temporary restraining order against Governor Beshear and Secretary Friedlander (collectively, "Governor Beshear") restraining them from enforcing the provisions of the March 19 Order issued by Secretary Friedlander [DN 11-1] and the March 25 Order issued by Governor Beshear [DN 11-2] insofar as the orders prohibit

in-person religious services that follow social-distancing guidelines.[1] In support of this motion, the Commonwealth states as follows:[2]

## ARGUMENT

In considering whether to grant a temporary restraining order, the Court must consider "1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by issuing the injunction." *Goetz v. Thompson*, No. 3:15-CV-50-GFVT, 2016 WL 347021, at *3 (E.D. Ky. Jan. 26, 2016) (collecting cases). "These factors are not prerequisites, but are factors that are to be balanced against each other." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). On balance, these factors strongly weigh in favor of this Court granting a temporary restraining order prior to this Sunday.

**I.    The Commonwealth is likely to succeed on the merits of its claims.**

    **A.    The Governor's orders violate the Free Exercise Clause of the First Amendment to the United States Constitution and Sections 1 and 5 of the Kentucky Constitution.**

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. const. amend. 1. This language prohibits the government from burdening one's "free exercise" of religion. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). The Free

---

[1] The Commonwealth has moved to intervene. The Commonwealth is not yet a party, but respectfully submits this motion for the Court's consideration.
[2] The Commonwealth incorporates by reference its tendered Intervening Complaint pursuant to Federal Rule of Civil Procedure 10(c).

Exercise Clause is incorporated against the states through the Fourteenth Amendment. *See id.*

Under the First Amendment, "[i]f the law appears to be neutral and generally applicable on its face, but in practice is riddled with exemptions . . . the law satisfies the First Amendment only if it advances interests of the highest order and is narrowly tailored in pursuit of those interests." *See Ward v. Polite*, 667 F.3d 727, 738 (6th Cir. 2012) (cleaned up). Said another way, even orders that appear facially neutral are not treated as such when they are filled with exemptions for secular activities. *Id.*; *see also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 537 (1993) (providing that when "individualized exemptions from a general requirement are available, the government 'may not refuse to extend that system to cases of 'religious hardship' without compelling reason.'"). The Governor's orders, filled as they are with exceptions, are subject to strict scrutiny.

As the Sixth Circuit recently recognized, "[t]he Governor's orders have several potential hallmarks of discrimination. One is that they prohibit 'faith-based' mass gatherings by name." *Maryville Baptist Church, Inc. v. Beshear*, No. 20-5427, 2020 WL 2111316, at *3 (6th Cir. May 2, 2020) (per curiam). Indeed, the Sixth Circuit has already recognized that a Free Exercise claim in this context is likely to succeed on the merits.

Governor Beshear's orders single out faith-based activities for prohibition, while simultaneously allowing secular activities involving the same risk, however great or slight, to continue, *i.e.* it is "riddled with exemptions." *Ward*, 667 F.3d at 738.

The March 19 and March 25 orders impose a sweeping prohibition against religious activity. But these same orders broadly permit individuals to gather into hardware stores and law offices, or newsrooms, liquor stores, and grocery stores. The fact that Governor Beshear has identified 19 categories of activities that are, in his judgment, more essential than in-person church services is proof positive of impermissible targeting of religious exercise. [Executive Order 2020-257].[3] And on April 29, 2020, Governor Beshear again—and without basis—singled out "houses of worship" for reopening on May 20 while suggesting that other secular activities could resume on May 11.[4]

This is quintessential discrimination against religion requiring the Governor to meet the high burden of strict scrutiny. And it is, without question, an unconstitutional targeting of religious activity because the Governor is unable to articulate any "compelling reason" for his refusal "to extend similar exemptions" to houses of worship and to those who would choose to participate in religious worship. *Lukumi*, 508 U.S. at 537.

Despite the First Amendment and Kentucky's own uniquely strong protections for religious liberty, Governor Beshear has failed to adopt neutral or generally applicable laws to address the current crisis. Instead, the March 19 and March 25 orders target religious organizations for disfavored treatment. But laws intruding on

---

[3] Executive Order 2020-257 (March 25, 2020), available at https://governor.ky.gov/attachments/20200325_Executive-Order_2020-257_Healthy-at-Home.pdf (last visited May 6, 2020).

[4] April 29, 2020 Press Release, *Gov. Beshear Outlines Road Ahead for Gradual Reopening of Businesses*, available at https://kentucky.gov/Pages/Activity-stream.aspx?n=GovernorBeshear&prId=148 (last visited May 6, 2020).

4

First Amendment rights must be neutral and generally applicable in both text and reality to survive constitutional scrutiny. *See Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 877–78 (1990). And "[a] law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Lukumi*, 508 U.S. at 546. The Governor's orders target religious conduct and are neither neutral nor generally applicable.

No one doubts that the government has a compelling interest in preventing the spread of the coronavirus. But the Governor is unable to explain why it is necessary to prohibit religious activities that pose exactly the same risks as non-religious activities. In fact, "restrictions inexplicably applied to one group and exempted from another do little to further these goals and do much to burden religious freedom." *Maryville Baptist Church*, 2020 WL 2111316, at *4. And there is ample evidence to suggest that broadly banning church services is not the least restrictive way of preventing the spread of the novel coronavirus. Tennessee, for example, has not closed its places of worship. Yet Kentucky's hospitalization rate for Covid-19 is more than twice that of Tennessee's, and Tennessee has had 40 percent fewer deaths per capita.[5]

---

[5] *See* Pegasus Institute, *Kentucky Coronavirus Hospitalizations per capita More than 2x Higher than Tennessee*, available at https://www.pegasuskentucky.org/single-post/2020/04/23/Kentucky-Coronavirus-Hospitalizations-per-capita-More-than-2x-Higher-than-Tennessee (last visited May 6, 2020); Pegasus Institute, *Tennessee has Tested 3x as Many Residents as Kentucky and has 40% Fewer Deaths Per Capita*, available at https://www.pegasuskentucky.org/single-post/2020/04/22/Tennessee-has-Tested-3x-as-Many-Residents-as-Kentucky-and-has-40-Fewer-Deaths-Per-Capita (last visited May 6, 2020).

Governor Beshear's orders face other problems as well. The Governor has insisted on maintaining a statewide lockdown on religious services that does not take into account varying infection rates in different places. Currently, there are seven counties in Kentucky that have *zero* reported cases and another 52 counties that have between one and ten reported cases.[6] While residents of Jefferson County are free to continue shopping at big box retailers and grocery stores, where they might run into countless strangers as they turn the corner of an aisle, residents in Bell County where there are *no reported cases* are forbidden from attending church on Sunday. This is not the least-restrictive means of stopping the spread of the coronavirus; rather, it is impermissible discrimination against religious liberties. *On Fire Christian Ctr., Inc. v. Fischer*, 2020 WL 1820249, at *8 (W.D. Ky. Apr. 11, 2020) ("[E]ven under *Jacobson*, constitutional rights still exist.").

The Governor's orders find no support in *Jacobson v. Massachusetts*. Even under *Jacobson*, a law is invalid if "purporting to have been enacted to protect the public health, the public morals, or the public safety, [the law] has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." 197 U.S. at 31. That is precisely the problem with Governor Beshear's orders here. The Governor purports to want to prevent infection by enforcing social distancing, but his orders permit large gatherings in secular contexts. Thus, the orders have "no real or substantial relation" to the Governor's purported goal. Singling out religious activity for disfavored

---

[6] *See* Kentucky Department of Public Health, available at https://govstatus.egov.com/kycovid19 (last visited May 6, 2020).

6

treatment is the kind of "palpable invasion of rights" that even a pandemic cannot justify. *On Fire Christian Ctr.*, 2020 WL 1820249, at *8 n.73; *see also Maryville Baptist Church*, 2020 WL 2111316, at *4 ("While the law may take periodic naps during a pandemic, we will not let it sleep through one.").

The Governor's orders single out and prohibit faith-based activities while allowing secular activities—even when gatherings at those secular activities include "large numbers of people." [Executive Order 2020-257].[7] Thus, those orders are "beyond all reason,' unconstitutional." *On Fire Christian Ctr.*, 2020 WL 1820249, at *2 (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905)). And for these reasons, the Commonwealth is likely to succeed on its First Amendment claims.

Likewise, the Commonwealth is likely to succeed on its claims brought under Section 1 and 5 of the Kentucky Constitution. Section 1 of the Kentucky Constitution provides that Kentuckians hold the "right of worshipping Almighty God according to the dictates of their consciences." Section 5 provides Kentuckians with the right of religious freedom and states that "the civil rights, privileges or capacities of no person shall be taken away, or in anywise diminished or enlarged, on account of his belief or disbelief of any religious tenet, dogma, or teaching. No human authority shall, in any case whatever, control or interfere with the rights of conscience."

The Kentucky Supreme Court has held that these sections offer Kentuckians the same religious freedom protections as the United States Constitution. *Gingerich*

---

[7] Executive Order 2020-257 (March 25, 2020), available at https://governor.ky.gov/attachments/20200325_Executive-Order_2020-257_Healthy-at-Home.pdf (last visited May 6, 2020).

7

*v. Commonwealth*, 382 S.W.3d 835, 839 (Ky. 2012). Accordingly, the March 19 and March 25 orders also violate the Kentucky Constitution.

> **B. The Governor's orders violate Kentucky's Religious Freedom Restoration Act.**

Kentucky law is clear: "Government shall not substantially burden a person's freedom of religion." KRS 446.350. "Burden" is defined to include "indirect burdens such as withholding benefits, assessing penalties, or an exclusion from programs or access to facilities." *Id*. There is no question that the Governor's orders bar "access" to religious facilities—the Beshear administration has, after all, ordered that no one may attend service at any religious facility. [March 19, 2020 order].[8] Likewise, there is no question that the Governor's orders have imposed penalties, namely a quarantine on worshippers who attended an Easter service at a separate church.

The question, then, is whether the Governor is likely to prove "by clear and convincing evidence that [he] has a compelling governmental interest in infringing the specific act or refusal to act and has used the least restrictive means to further that interest." KRS 446.350. In other words, can the Governor's orders survive strict scrutiny. The Governor cannot meet his evidentiary burden in light of his orders—particularly his decision to permit the continued operation of "*typical office environments*, factories, or retail or grocery stores *where large numbers of people are present*, but maintain social distancing." [March 19, 2020 order (emphasis added)]. [9]

---

[8] March 19 Order by Acting Secretary Friedlander and Commissioner Stack, available at https://governor.ky.gov/attachments/20200319_Order_Mass-Gatherings.pdf (last visited May 6, 2020).
[9] *Id*.

8

Simply put, permitting worshippers to attend a service where everyone typically remains in the same spot throughout (all the while social distancing) will logically place fewer Kentuckians within six feet of one another than shopping at a grocery store, hardware store, or other retail business. And that is not to mention that in such retail establishments shoppers will pick up, handle, and put back goods, maneuver shopping carts with their hands, and touch credit card machines. For these reasons, the Commonwealth is likely to succeed on the merits of its claims under the Kentucky Religious Freedom Restoration Act contained in KRS 446.350.

### C. The Governor's orders violate the First Amendment right of assembly.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting . . . the right of the people peaceably to assemble." The right to peaceably assemble is incorporated against the states through the Fourteenth Amendment. *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937).

Governor Beshear's orders purport to ban worshippers from assembling together in a peaceful manner. Because the right of assembly is a fundamental right, *Whitney v. California*, 274 U.S. 357, 373 (1927), it is subject to strict scrutiny, meaning that the ban may be permitted only if it furthers a compelling government interest and no less restrictive alternative is available.

The March 19 Order and March 25 Order are unconstitutional bans on the right of assembly because they are not narrowly tailored. *See Maryville*, 2020 WL 2111316, at *2 ("The way the orders treat comparable religious and non-religious activities suggests that they do not amount to the least restrictive way of regulating

9

the churches."). As previously discussed, less restrictive alternatives are available. For example, worshippers could gather for an in-person service and practice social distancing and other health guidelines, just as Tabernacle Baptist Church has offered to do. Accordingly, the orders are unconstitutional, and a temporary restraining order should be entered.

## II. Absent a stay, the Commonwealth's citizens will suffer irreparable injury.

The Sixth Circuit has stated that the Governor's prohibition on attending worship service through his proposed May 20 re-opening "assuredly inflicts irreparable harm." *See Maryville Baptist Church*, 2020 WL 2111316, at *4. "It is well-settled that 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)); *see also Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir.1989) ("The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.") (citing *Elrod*, 427 U.S. at 373). Here, the Commonwealth has demonstrated that it is likely to succeed on the merits of its First Amendment claim. Thus, the Commonwealth is presumed to have suffered an irreparable injury sufficient to warrant a temporary restraining order and preliminary injunction. *Id*.

## III. Granting the stay would not cause substantial harm to others.

Next, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested

relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Predictably, the Governor may argue that allowing religious gatherings may lead to further spread of the coronavirus. But rather than a total ban on such gatherings, there are less restrictive means that would further that compelling goal because the Governor is unable to offer any good reason for "refusing to trust the congregants who promise to use care in worship in just the same way it trusts accountants, lawyers, and laundromat workers to do the same. Are they not often the same people, going to work on one day and attending worship on another?" *Maryville Baptist Church*, 2020 WL 2111316, at *4. Stated differently, a narrowly tailored order could provide the same protections for religious services as given to secular activities while also protecting the public health.

Here, the balance of equities ultimately falls in the Commonwealth's favor because its citizens face a choice of disregarding sincerely held religious beliefs or risking arrest, quarantine, or other enforcement actions. *On Fire Christian Ctr.*, 2020 WL 1820249, at *9. A temporary restraining order would not cause substantial harm to others.

IV.     **The public interest would be served by issuing the injunction.**

"As for the public interest, treatment of similarly situated entities in comparable ways serves public health interests at the same time it preserves bedrock free-exercise guarantees." *See Maryville Baptist Church*, 2020 WL 2111316, at *4 (citing *Bays v. City of Fairborn*, 668 F.3d 814, 825 (6th Cir. 2012)). Accordingly, the

11

public interest is served by a temporary restraining order that prevents the Governor and Secretary from unlawfully burdening the exercise of religion.

## Compliance with Rule 65(b)

Counsel for the Commonwealth certifies that it has given notice of its intention to seek an emergency hearing and for its request for a temporary restraining order to Governor Andrew Beshear through his General Counsel, La Tasha Buckner, and Chief Deputy General Counsel, Travis Mayo, and to Secretary Friedlander through his General Counsel, Wesley Duke. Each of Ms. Buckner, Mr. Mayo, and Mr. Duke were sent by email a copy of the Commonwealth's Motion to Intervene, Intervening Complaint, and this Motion for an Emergency Hearing and Temporary Restraining Order prior to the filing of this motion. Moreover, a filed copy of the aforementioned documents will be served on Ms. Buckner, Mr. Mayo, and Mr. Duke.

In addition to notification of the Commonwealth's filings, the Office of the Attorney General provided to Ms. Buckner, Mr. Mayo, and Mr. Duke a copy of Tabernacle Baptist Church's Complaint and Motion for Temporary Restraining Order and Motion for Emergency Hearing by email at 10:42 a.m. on May 6, 2020. As agent for service of process for the Commonwealth and all of its agencies pursuant to Kentucky Rule of Civil Procedure 4.04(6), the Office of the Attorney General was also personally served with a copy of the Summons and Complaint filed by Tabernacle Baptist Church on May 6, 2020. The Office of the Attorney General provided the Summons and Complaint to Ms. Buckner and Mr. Mayo at 11:38 a.m. and Mr. Duke at 11:39 a.m., all on May 6, 2020.

Through its Verified Intervening Complaint, which is incorporated by reference, the Commonwealth of Kentucky *ex rel*. Attorney General Daniel Cameron has clearly shown that Kentucky's citizens have and continue to experience immediate and irreparable injury by having their Constitutional rights to free exercise of religion and to assemble burdened by the Defendants.

## CONCLUSION

For all of these reasons, the Court should schedule an emergency hearing and issue a temporary restraining order.

Respectfully submitted,

**DANIEL CAMERON**
**Attorney General of Kentucky**

/s/ Barry L. Dunn
Barry L. Dunn
*Deputy Attorney General*
Victor B. Maddox
*Assistant Deputy Attorney General*
Carmine G. Iaccarino
*Assistant Attorney General*
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Barry.Dunn@ky.gov
Victor.Maddox@ky.gov
Carmine.Iaccarino@ky.gov

*Counsel for the Commonwealth of Kentucky,*
*ex. rel. Attorney General Daniel Cameron*

# **CERTIFICATE OF SERVICE**

I certify that on May 6, 2020, the above document was filed with the CM/ECF filing system, which electronically served a copy to all counsel of record. I further certify that a copy of the foregoing was served by email and U.S. mail on the following individuals:

Joseph A. Bilby
Bilby Law PLLC
222 Eastover Drive
Frankfort, Kentucky 40601
joe@bilbylaw.com

Matthew T. Martens
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Matthew.martens@wilmerhale.com

Hiram Sasser, III
First Liberty Institute
2001 West Plano Parkway, Suite 1600
Plano, Texas 75075
hsasser@firstliberty.org

La Tasha Buckner
Travis Mayo
Office of the Governor
700 Capitol Avenue
Frankfort, Kentucky 40601
latasha.buckner@ky.gov
travis.mayo@ky.gov

Wesley Duke
Office of Legal Services
Cabinet for Health & Family Services
275 East Main Street
Frankfort, Kentucky 40601
wesleyw.duke@ky.gov

*Counsel for Plaintiff Tabernacle Baptist Church, Inc. of Nicholasville, Kentucky*

/s/ Barry L. Dunn
*Counsel for the Commonwealth of Kentucky, ex. rel. Attorney General Daniel Cameron*