UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| TABERNACLE BAPTIST CHURCH, INC. OF NICHOLASVILLE, KENTUCKY, | ) ) ) | Civil No. 3:20-cv-00033-GFVT |
| Plaintiff, | ) ) | |
| V. | ) ) ) | **OPINION & ORDER** |
| ANDREW BESHEAR, in his official capacity as Governor of Kentucky, *et al.*, | ) ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

We are a relatively young nation. But our Constitution is the oldest in the world.[1] We describe it as enduring— a value that must be protected not only when it is easy but when it is hard.

And this is a hard and difficult time. A new virus sweeps the world, ravages our economy and threatens our health. Public officials, including the defendants in this case, make minute by minute decisions with the best of intentions and the goal of saving the health and lives of our citizens.

But what of that enduring Constitution in times like these? Does it mean something different because society is desperate for a cure or prescription?

---

[1] "Written in 1787, ratified in 1788, and in operation since 1789, the United States Constitution is the world's longest surviving written charter of government." UNITED STATES SENATE, CONSTITUTION DAY, https://www.senate.gov/artandhistory/history/common/generic/ConstitutionDay.htm.

Simply put, that is the question presented here. Tabernacle Baptist Church wants to gather for corporate worship. They want to freely exercise their deeply held religious belief about what it means to be a faithful Christian. For them, it is "essential" that they do so. And they want to invoke the Constitution's protection on this point.

But the governor, by executive order, has put a stop to that. He can do that, but he must have a compelling reason for using his authority to limit a citizen's right to freely exercise something we value greatly— the right of every American to follow their conscience on matters related to religion. As explained below, despite an honest motive, it does not appear at this preliminary stage that reason exists. Consequently, as explained below, the motions for a temporary restraining order are GRANTED.

# I

To curb the spread of the coronavirus in the Commonwealth of Kentucky, Governor Andrew Beshear has issued a series of executive orders limiting social interaction between Kentuckians. Non-essential businesses are temporarily closed, restaurants are relegated to take-out only, and citizens have been asked to practice social distancing. The plaintiffs take exception to two of these protective measures. On March 19, 2020, as part of broader efforts to "flatten the curve,"[2] acting Secretary of the Cabinet for Health and Family Services Eric Friedlander issued an order prohibiting "mass gatherings." [R. 3-7.]. Per Secretary Friedlander's Order, mass gatherings include "any event or convening that brings together groups of individuals, including, but not limited to, community, civic, public, leisure, **faith-based**, or sporting events; parades;

---

[2] The term "flatten the curve" refers to slowing the spread of the coronavirus through the population. The goal is to "reduce[] the number of cases that are active at any given time, which in turn gives doctors, hospitals, police, schools, and vaccine-manufacturers time to respond, without becoming overwhelmed." Siobhan Roberts, *Flattening the Coronavirus Curve*, The New York Times, https://www.nytimes.com/article/flatten-curve-coronavirus.html. The result is that, when plotted on a line graph, the rate of infection appears as a flattened curve rather than a steep peak.

concerts; festivals; conventions; fundraisers; and similar activities." *Id.* (emphasis added).  Some activities which necessarily involve large groups of individuals were excluded.  "[A]irports, bus and train stations, medical facilities, libraries, shopping malls and centers, or other spaces where persons may be in transit" were not included within the definition of "mass gathering," nor were "typical office environments, factories, or retail or grocery stores[.]" *Id.*

Later, on March 25, 2020, Governor Beshear issued an executive order mandating all businesses which are not "life-sustaining" close.  [R. 3-5.].  Religious organizations were excluded from the category of "life-sustaining," except to the extent they provide "food, shelter and social services."  *Id.*  Entities allowed to remain open included hardware stores, laundromats and dry cleaners, law offices, and liquor stores, provided they adhere to social distancing and hygiene guidelines.  *See id.*

Plaintiff Tabernacle Baptist Church describes itself as "an independent, fundamental, Baptist church, independent of the world but dependent on the Word of God."  *Id.* at ¶ 13.  Since issuance of the above orders, Tabernacle has ceased holding in-person religious services.  [R. 3-1 at 5.]  Instead, Tabernacle has resorted to broadcasting services online via Facebook or holding drive-in services wherein congregants may listen to the service over their FM radio.  *Id.*  For Plaintiff, these substitutes offer cold comfort.  "Tabernacle has a sincerely-held religious belief that online services and drive-in services do not meet the Lord's requirement that the church meet together in person for corporate worship."  *Id.*  For this reason, Tabernacle argues the foregoing Orders violate its First Amendment rights to free exercise of religion and freedom of assembly.[3]  [R. 1.]  Tabernacle argues it is likely to succeed on the merits of its claims because the orders are not narrowly tailored to serve the public health interest.

---

[3] The executive order has yet to be enforced against Plaintiff Tabernacle.  However, the Court

Defendants dispute this characterization. Although not required in the context of ruling on a TRO, the Court held a telephone hearing this afternoon, shortly after the Defendants filed an appeal in a similar case. Counsel for Tabernacle, the Attorney General, Secretary Friedlander, and Governor Beshear participated in the call. Defendants argued the prohibition on mass gatherings is constitutional, because it is applicable to all mass gatherings generally. Further, the Defendants pointed out factual distinctions between the social interaction that takes place in a transactional setting, such as a grocery store, and the communal nature of religious services. The arguments made were substantive, not jurisdictional.

Notably, Tabernacle's is not the first challenge that has sought to enjoin the actions of Kentucky officials that curtailed residents' ability to participate in corporate worship. To date, three other district courts in Kentucky have considered whether to grant a temporary restraining order to enjoin government proscriptions on religious gatherings. In one case, the plaintiff church requested a TRO against the City of Louisville's prohibition on drive-in church services on Easter. *On Fire Christian Ctr., Inc. v. Fischer*, No. 3:20-CV-264-JRW, 2020 U.S. Dist.

---

notes that there is no issue at this preliminary stage concerning Tabernacle's ability to establish standing in this apparent pre-enforcement challenge. *McKay v. Federspiel*, 823 F.3d 862, 867 (6th Cir. 2016); *see also Michigan Gas Co. v. F.E.R.C.*, 115 F.3d 1266, 1269 (6th Cir. 1997) ("Standing 'is a qualifying hurdle that plaintiffs must satisfy even if raised sua sponte by the court.'"). To bring such a challenge, a plaintiff must sufficiently allege (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that is "proscribed by a [law]," and (3) "there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted). It is beyond dispute that the first two elements are easily met. As to the third element, the Court notes first that violation of the recently promulgated executive orders is a Class A misdemeanor under Kentucky law. *See* KRS § 39A.990; *see also* KRS § 532.020(2); KRS § 534.040 (setting forth the penalties for a Class A misdemeanor). And second, there is an established record of enforcement against churches that have violated the executive order in the same way Tabernacle proposes. *See Maryville Baptist*, 2020 U.S. App. LEXIS 14213, at *1 (6th Cir. May 2, 2020); *Roberts*, 2020 U.S. Dist. LEXIS 77987, at *2 (E.D. Ky. May 4, 2020). Thus, it appears that Tabernacle also meets this third and final element. In sum, on the limited record before the Court, it appears that Tabernacle meets each element of the pre-enforcement standing analysis and, notably, the Governor has advanced no argument to the contrary. Indeed, the Governor, to this point in the litigation, evinces an intent to continue enforcing the orders at issue.

LEXIS 65924 (W.D. Ky. Apr. 11, 2020). The other two cases centered on the constitutionality of Governor Beshear's executive orders. *See Roberts v. Neace*, No. 2:20-CV-054-WOB, 2020 U.S. Dist. LEXIS 77987 (E.D. Ky. May 4, 2020); *Maryville Baptist Church, Inc. v. Beshear*, No. 3:20-CV-278-DJH, 2020 U.S. Dist. LEXIS 70072 (W.D. Ky. Apr. 18, 2020). Appeals are pending before the Sixth Circuit in each of these latter cases. In *Roberts*, plaintiffs have moved for an injunction pending appeal that would permit them to attend in-person church services this Sunday. [*Roberts, et al. v. Neace, et a.*, 2:20-54-WOB-CJS, R. 56.] The Plaintiffs in *Maryville Baptist* are awaiting a district court ruling on their motion to enjoin the Governor's prohibition on mass gatherings as it applies to in-person religious services while their appeal remains pending. *Id.*

While instructive, this Court is not bound by the decisions of the district courts in those cases. *See Camreta v. Greene*, 563 U.S. 692, 709 n. 7 (2011); *Ohio A. Philip Randolph Inst. v. Larose*, 761 F. App'x 506, 514 n. 4 (6th Cir. 2019) ("[T]ypically district court judges are not bound by previous decisions of other judges within the same district."). Ultimately, the constitutionality of these governmental actions will be resolved at the appellate level, at which point the Sixth Circuit will have the benefit of the careful analysis of the various district courts, even if we disagree.

## II

Rule 65 allows the Court to issue a TRO without notice to the other party only if "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). As noted, the Governor and

Secretary Friedlander filed an appearance, and participated in a hearing held earlier today. Additionally, although the Governor has not yet prepared a response to the instant motion, the Court considered briefing filed by the defendants in other, similar challenges to the prohibition on mass gatherings as it pertains to religious services, and provided at the Court's request. In determining whether to issue a TRO, the Court examines: 1) whether the movant has shown a strong likelihood of success on the merits; 2) whether the movant will suffer irreparable harm if the injunction is not issued; 3) whether the issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban County Government*, 305 F.3d 566, 573 (citations omitted).

"[A] temporary restraining order is an extraordinary remedy designed for the limited purpose of preserving the status quo pending further proceedings on the merits[.]" *Stein v. Thomas*, 672 Fed. App'x 565, 572 (6th Cir. 2016). This is because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Reed v. Cleveland Bd. of Educ.*, 581 F.2d 570, 573 (6th Cir. 1978) (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974)). Thus, Tabernacle must show that the foregoing preliminary injunction factors are met, and that immediate, irreparable harm will result if the TRO is not issued.

**A**

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or exercising the free exercise thereof," with few exceptions. U.S. Const. amend. 1. "When constitutional rights are threatened or impaired, irreparable injury is presumed." *ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015)

(internal citations omitted). The Supreme Court has held "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). This is precisely what Tabernacle alleges: violation of its First Amendment rights, specifically its right to exercise its religion and the right to freely assemble. [R. 1; R. 3-1.] Sixth Circuit precedent establishes that, "when a party seeks a preliminary injunction on the basis of a . . . violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

Of course, "[t]he possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community." *Crowley v. Christensen*, 137 U.S. 86, 89 (1890). The question becomes, then, whether the mass gathering prohibition issued by Governor Beshear amounts to "reasonable conditions" on Kentuckians' constitutional right to free exercise of their sincerely-held religious beliefs. Context is important. The orders at issue do not simply restrict religious expression; they restrict religious expression in an attempt to protect the public health during a global pandemic. As a result, the Court is tasked with identifying precedent in unprecedented times.

Defendant Governor Beshear and other courts have looked to *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). *See In re Abbott*, 954 F.3d 772 (5th Cir. 2020); *Adams & Boyle, P.C. v. Slatery*, 2020 U.S. App. LEXIS 13357 (6th Cir. Apr. 24, 2020); *On Fire Christian Ctr. v. Fischer*, 2020 U.S. Dist. LEXIS 65924, *16–17 (W.D. Ky. Apr. 11, 2020). There, the Supreme Court considered whether, when faced with an outbreak of smallpox, the city of Cambridge could constitutionally require its adult residents to receive vaccinations against the disease. *See*

*Jacobsen*, 197 U.S. at 25–26.  Those who refused to vaccinate were subjected to a fine.  *Id.* at 26.  Although the defendant argued the law was an invasion of his liberty and violative of due process, the Supreme Court upheld the vaccination requirement based on public health concerns.  *Id.* at 39.

Though over a century old, *Jacobson* is arguably the case that most directly speaks to "the expanded scope of a state's police power during times of public health crises[.]" *Adams & Boyle, P.C.*, 2020 U.S. Dist. LEXIS 13357 at *17.  The Fifth Circuit has distilled *Jacobson*'s analysis into a clearer, multi-factor test:

> The bottom line is this: when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some "real or substantial relation" to the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law."  Courts may ask whether the state's emergency measures lack basic exceptions for "extreme cases," and whether the measures are pretextual—that is, arbitrary or oppressive."  At the same time, however, courts may not second-guess the wisdom or efficacy of the measures.

*In re Abbott*, 954 F.3d 772, 784–85 (5th Cir. 2020) (internal citations omitted); *see also Adams & Boyle, P.C. v. Slatery*, 2020 U.S. App. LEXIS 13357 (6th Cir. Apr. 24, 2020) (applying the foregoing factors to the Governor of Tennessee's directive to "postpone surgical and invasive procedures that are elective and non-urgent" including abortions).  The *Jacobson* test gives states considerable leeway in enacting measures during public health emergencies.  However, "even under *Jacobson*, constitutional rights still exist."  *On Fire Christian Ctr.*, 2020 U.S. Dist. LEXIS 65924 at * 15.  And while courts should refrain from second-guessing the efficacy of a state's chosen protective measures, "an acknowledged power of a local community to protect itself against an epidemic . . . might go so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere[.]" *Jacobson*, 197 U.S at 28.

Here, not only has Tabernacle alleged an irreparable injury, but Tabernacle is likely to succeed on the merits of its federal constitutional claim. Defendant does not dispute that the challenged orders place a burden on the free exercise of religion in Kentucky. A law that incidentally burdens religion, but "that is neutral and of general applicability need not be justified by a compelling government interest[.]" *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531 (1993). If a law is not neutral or generally applicable, then it "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Id.* 531–32. Even viewed through the state-friendly lens of *Jacobson*, the prohibition on religious services presently operating in the Commonwealth is "beyond what was reasonably required for the safety of the public." *Jacobson*, 197 U.S. at 28.

The Sixth Circuit recently addressed a similar challenge to Kentucky's prohibition on religious services. *See Maryville Baptist Church, Inc. v. Beshear*, 2020 U.S. App. LEXIS 14213 (6th Cir. May 2, 2020). Maryville Baptist Church held a drive-in service on Easter Sunday. But, pursuant to the prohibition on mass gatherings and executive order closing non-essential businesses—the same orders challenged in this case—"Kentucky State Police arrived in the parking lot and issued notices to the congregants that their attendance at the drive-in service amounted to a criminal act." *Id.* at *3. On appeal, the Sixth Circuit considered whether to stay the district court's order denying Maryville Baptist Church's motion to enjoin enforcement of these restrictions. *Id.* In its analysis, the Court observed that Maryville Baptist was likely to succeed on the merits of its claim because "[t]he way the orders treat comparable religious and non-religious activities suggests that they do not amount to the least restrictive way of regulating the churches." *Id.* at *7.

9

Ultimately, the Sixth Circuit opted to enjoin enforcement of the orders only as they pertained to drive-in services. *Id.* at * 15. *Maryville Baptist* does not decide this case, but it is indicative of what might come. It follows that the prohibition on in-person services should be enjoined as well. The restrictions which the Sixth Circuit criticized as "inexplicably applied to one group and exempted from another" are the same restrictions Tabernacle challenges today. *Id.* at *11. And, as the Sixth Circuit recognized, "many of the serial exemptions for secular activities pose comparable public health risks to worship services." *Id.* at *10. The prohibition on mass gatherings is not narrowly tailored as required by *Lukumi*. There is ample scientific evidence that COVID-19 is exceptionally contagious. But evidence that the risk of contagion is heightened in a religious setting any more than a secular one is lacking. If social distancing is good enough for Home Depot and Kroger, it is good enough for in-person religious services which, unlike the foregoing, benefit from constitutional protection.

Finally, the Court is cognizant that absent a temporary restraining order today, congregants Tabernacle Baptist will be forced to forego in-person service this Sunday. Tabernacle states it "is committed to physically gathering its congregants in person in its sanctuary in a manner consistent with social distancing precautions in order to ensure the safety and well-being of its congregants." [R. 3-1 at 4.] And, should they be permitted to gather, Tabernacle has said it will follow the Center for Disease Control's guidelines on mass gatherings. *Id.* On this condition, the Court will GRANT Plaintiff's Motion for Temporary Restraining Order.

**B**

Plaintiffs have established a likelihood of success on the merits with respect to their free exercise claim, and the Court grants their motion for a TRO on that basis. The likelihood of

success on the merits is largely determinative in constitutional challenges like this one, however, the remaining factors also mitigate in favor of Plaintiffs. As already explained, Tabernacle's injury is irreparable. *See Elrod*, 427 U.S. at 373. To stay the prohibition on mass gatherings with respect to religious services which observe the social distancing guidelines promulgated by the Center for Disease Control, as Tabernacle has promised to do, does not harm the Defendants. Finally, the public interest favors the enjoinment of a constitutional violation. *See Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).

While the Court has granted Plaintiff's and the Attorney General's Motions for a TRO based on the free exercise clause of the First Amendment, that is not the only issue before it. Tabernacle also brings claims grounded in the First Amendment guarantee of freedom to assemble, the Kentucky Constitution, and Kentucky's Religious Freedom Restoration Act. [R. 1] These issues are reserved for another day, and will benefit from briefing from the Defendants.

**C**

As a final matter, the Court considers the scope of the TRO. The Attorney General urges the Court to apply its injunction statewide rather than limiting its application to Tabernacle Baptist Church. In *Califano v. Yamasake*, the Supreme Court pointed out that one of the "principles of equity jurisprudence" is that "the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class." *Rodgers v. Bryant*, 942 F.3d 451 (quoting *Califano v. Yamasake*, 442 U.S. 682 (1979)); *see also Trump v. Int'l Refugee Assist. Project*, 137 S. Ct. 2080, 2087 (2017) (per curiam) ("Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents."); *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220, 65 S. Ct. 1130, 89 L. Ed. 1566 (1945) ("A preliminary

injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally."). In the present case, the Executive Order at issue does not just affect Tabernacle Baptist Church. The Executive Order applies to all churches. Therefore, as the Eighth Circuit has recently upheld, injunctive relief may extend statewide because the violation established impacts the entire state of Kentucky.

### III

The Constitution will endure. It would be easy to put it on the shelf in times like this, to be pulled down and dusted off when more convenient. But that is not our tradition. Its enduring quality requires that it be respected even when it is hard.

In light of the foregoing, the Court will grant Plaintiff's Motion for a TRO. But the Court's review at this stage is preliminary. In depth consideration of the constitutional issues at play will require additional briefing from the parties, and particularly a response from Defendants. Expedited consideration is appropriate. Accordingly, and the Court being otherwise sufficiently advised, it is **ORDERED** as follows:

1. The Motions for Temporary Restraining Order **[R. 3; R. 13]** are **GRANTED;**

2. Defendants are **ENJOINED** from enforcing the prohibition on mass gatherings with respect to any in-person religious service which adheres to applicable social distancing and hygiene guidelines;

3. Intervening Plaintiff Attorney General Daniel Cameron's Motion for Emergency Hearing **[R. 13]** is **DENIED AS MOOT**;

4. A telephonic scheduling conference shall be held **Monday, May 11, 2020** at **11:00 a.m.**, with Judge Van Tatenhove sitting in **Frankfort**, Kentucky; and

5.      To join the teleconference, the parties are **DIRECTED** to call AT&T Teleconferencing at 1-877-336-1280 and enter Access Code 2086161 (followed by #), and, when requested, enter the Security Code 09170 (followed by #).

This the 8th day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge